UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA BRYAN, individually and on
behalf of similarly situated persons,

            Plaintiff,

        -v-                  3:24-CV-415

PATRIOT LLC, MVC LLC,
and JAMIE MCVANNAN,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                  OF COUNSEL:

FORESTER HAYNIE, PLLC      MATTHEW R. MCCARLEY, ESQ.
Attorneys for Plaintiff           JASON T. BROWN, ESQ.
11300 North Central Expressway
Suite 550
Dallas, TX 75243

THE WLADIS LAW FIRM, P.C.    TIMOTHY J. LAMBRECHT, ESQ.
Attorneys for Defendants        CHRISTOPHER BAIAMONTE,
6312 Fly Road                      ESQ.
P.O. Box 245
East Syracuse, NY 13057

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

Named plaintiff Joshua Bryan, a former pizza delivery driver, brings this putative collective action against defendants Patriot, LLC, MVC, LLC, and Jamie McVannan, a group of parties who, until recently, operated certain Papa John's Pizza stores.

Plaintiff's amended complaint alleges that defendants violated the Fair Labor Standards Act ("FLSA") by failing to appropriately reimburse their delivery drivers for costs incurred through the reasonable business usage of their vehicles. As a result of this alleged policy and practice, plaintiff claims that he and other similarly situated delivery drivers were compensated below the federal minimum wage.

On November 15, 2024, plaintiff moved to (1) conditionally certify his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b); and (2) approve the proposed form and manner of providing notice to potential opt-in plaintiffs. For the reasons stated below, plaintiffs' motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

Named plaintiff Joshua Bryan ("Bryan") worked as a delivery driver for Patriot LLC, MVC LLC, and Jamie McVannan (collectively "defendants") at one of their Papa John's Pizza ("Papa John's") stores between July 2020 and

September 2021. Bryan Aff., Dkt. No. 36-3 ¶ 2. Bryan worked at defendants' store in Ithaca, New York. *Id*.

As a delivery driver, Bryan's primary responsibility was to deliver food items to customers in the vicinity of the store. Bryan Aff. ¶ 3. Bryan was required "to maintain and pay for an operable, safe, and legally-compliant" vehicle to complete food deliveries. *Id*. ¶ 6. Consequently, Bryan bore costs for maintenance that included: gasoline, vehicle parts and fluids, repair and maintenance service(s), automobile insurance, and, of course, the accelerated depreciation of the vehicle—all primarily for defendants' benefit. *Id*. Bryan contends that he was subject to defendants' driver reimbursement policy (the "policy") and believed that the policy also applied to all of defendants' other delivery drivers. *Id*. ¶ 7.

Plaintiff alleges the policy was "inadequate to fully reimburse [...] the expenses [...] incurred delivering food items for Papa John's." Bryan Aff. ¶ 7. While working for defendants, Bryan alleges he made $3.00 per hour and was reimbursed "just $0.50 per mile for the majority of [his] employment with defendants."[1] *Id*. ¶ 3.

---

[1] Plaintiff avers that the lowest applicable mileage rates during the time of his employment was $0.575 based on rates set by the Internal Revenue Service ("IRS"). *See, e.g.*, Bryan Aff. ¶ 4. Thus, plaintiff alleges lost wages of $0.075 per mile driven. *Id*. Plaintiff alleges he regularly made six or more deliveries per hour and drove roughly six miles per delivery. *Id*. Therefore, plaintiff argues he lost $2.70 for every hour worked ($0.075 x 6 miles per delivery x 6 deliveries per hour = $2.70). *Id*.

- 3 -

Bryan alleges the policy applied to other delivery drivers employed by defendants based on "conversations with other drivers [he] worked with [that were] employed by defendants[.]"  Bryan Aff. ¶ 8.  These delivery drivers were allegedly subjected to the same inadequate policy because they were "classified, treated, and paid by defendants as one group."  *Id.*

Donjuan Mallory ("Mallory") worked at the same Papa John's pizza store in Ithaca where Bryan worked.[2]  Mallory Aff., Dkt. No. 36-4.   Mallory has submitted an affidavit that supports Bryan's version of events.  *Id.*  Mallory worked for defendants as a delivery driver from November of 2019 until May of 2021 at the same store in Ithaca.  *Id.* ¶ 1.  Mallory's primary job-related duty was delivering food to defendants' customers in the surrounding area.  *Id.* ¶ 3.  Mallory alleges that defendants' policy was in place throughout her employment.  *Id.* ¶ 2.

Like Bryan, Mallory contends she was paid $3.00 per hour and reimbursed $0.50 for every mile driven as a delivery driver for "the majority" of that time.  Mallory Aff. ¶ 4.  She too contends that, during this time, the IRS mileage reimbursement rate was never less than $0.575.  *Id.*  And like Bryan, Mallory alleges that "[e]very mile driven on the job decreased net wages by $0.075 per mile driven."  *Id.*

---

[2]  Mallory is the sole additional early opt-in plaintiff.  Dkt. No. 36-1 at 5.  Mallory has submitted her Notice of Consent to be a party in this matter.  Dkt. No. 5.

## III. <u>LEGAL STANDARD</u>

"Congress enacted the [FLSA] to correct 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 227 (2d Cir. 2018) (quoting 29 U.S.C. § 202(a)). "[T]he FLSA imposes substantive wage, hour, and overtime standards, including requirements for the payment of a minimum wage and for time-and-a-half overtime pay for hours worked in excess of 40 hours during a week." *Id.* (citing 29 U.S.C. §§ 206(a), 207(a)(1)).

"Section 216(b) provides a private right of action to recover unpaid overtime compensation against any employer for and on behalf of one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Horner v. Little Caesars Enters., Inc.*, 2025 WL 1404162 at * 3 (N.D.N.Y. May 15, 2025) (cleaned up).

Unlike a Rule 23 class, members of an FLSA collective must affirmatively opt in to become a party to the action. *See* § 216(b) ("No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Under the FLSA, […] 'conditional certification' does not produce a class with an independent legal status […] or join additional

parties to the action; [instead, t]he sole consequence of conditional certification is the sending of court-approved written notice to employees […] who in turn become parties to a collective action only by filing written consent with the court[.]") (cleaned up).

## IV. DISCUSSION

Plaintiff seeks the conditional certification of an FLSA collective action that includes "delivery driver[s] employed by Patriot LLC or MVC LLC d/b/a "Papa John's" between March 25, 2021 and the present." Dkt. No. 36-5 at 1; *see also* Dkt. No. 36-2 at 1.[3]  Defendant has opposed.  Dkt. No. 38.

Taking defendants arguments in turn, they claim that: 1) plaintiff's FLSA claims are entirely speculative; 2) they only ever owned three Papa John's stores and never employed a significant number of delivery drivers; 3) they no longer own any Papa John's stores and have not for approximately two years; and 4) Bryan and Mallory were independent contractors, not employees—as a result, their compensation was distinct from other *employee* delivery drivers that defendant utilized.  Defs'. Mem. at 4–9.

In the Second Circuit, district courts employ a two-step process when considering certifying FLSA collective actions.  *Horner*, 2025 WL 1404162 at \*4; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 911 F.3d 528, 540 (2d Cir.

---

[3] Pagination corresponds to CM/ECF page headers.

2016) ("In *Myers*[*v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)], we endorsed a two-step process for certifying FLSA collective actions").

"The first step […] is commonly known as conditional certification […] and requires the court to determine whether to 'send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred.'" *Laskowski v. St. Camillus Nursing Home Co., Inc.*, 2024 WL 4132198, at \*7 (N.D.N.Y. Sept. 10, 2024) (quoting *Myers*, 624 F.3d at 554–55) (cleaned up).

To obtain conditional certification, plaintiffs must "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id*. (citing *Myers*, 624 F.3d at 655). Where conditional certification is warranted, the Court, acting within its discretion, may also order notice to potential opt-in plaintiffs. *Id*. at \*7.

"At the second stage, the Court will, on a fuller record, decide whether the collective action 'may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs.'" *Laskowski*, 2024 WL 4132198, at \*2 (citing *Myers*, 624 F.3d at 655).

Where the record indicates that plaintiffs who have opted in are not similarly situated to the named plaintiff, a defendant may move to decertify the collective. *Horner*, 2025 WL 1404162 at \*3; *see also Davella v. Ellis Hosp., Inc.*, 2024 WL 98352, at \*1 (N.D.N.Y. Jan. 9, 2024).

A. **Commonality**

Plaintiffs claim commonality by asserting there are at least two similarly situated plaintiffs—performing the same duties for the same pay—who were injured by the same common policy and practice implemented by defendants. In response, defendants argue that plaintiff's claim that a class of similarly situated delivery drivers failed to receive adequate compensation under the policy is entirely speculative. Defs.' Mem., Dkt. No. 38 at 4.

Defendants argue plaintiff, without evidence, erroneously alleges that they operate "numerous" locations with hundreds of similarly situated delivery drivers presently or formerly employed. Defs.' Mem. at 5. Rather, defendants claim they only owned three Papa John's stores—and have not owned them for several years. *Id*. Defendants also contend that plaintiff was not similarly situated to other delivery drivers they employed, and that the drivers who were employees were paid approximately double the federal minimum wage. *Id*. at 5–6. Finally, defendants argue that plaintiff's motion relies on anecdotal hearsay, and that this is insufficient to pass the first step of the two-part test as set forth in *Myers. Id*. at 6–7.

"The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" As stated *supra*, to obtain conditional certification, a plaintiff must "make a modest factual showing that they and

potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 554–55. Employees need not be "identical [to a named plaintiff] in all respects" to be deemed "similarly situated." *Santos v. Nuve Miguel Corp.*, 2021 WL 5316007, at *4 (S.D.N.Y. Nov. 16, 2021).

"The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions […] but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether "similarly situated" plaintiffs do in fact exist. *Myers*, 624 F.3d at 555 (citing *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (holding that "[p]laintiffs […] amply satisfy[y] this burden [where they make] substantial allegations, both in their Complaint and supporting affidavits") (internal citations omitted).

Plaintiff meets this burden. He has offered facts about a inadequate mileage reimbursement policy under which at least two employees of defendants, both working as delivery drivers, allege they were compensated below the federal minimum wage. *See* Dkt. Nos. 36-1, 36-3, 36-4. Plaintiff alleges how the policy fell short in violation of the FLSA, too—for every mile he drove performing his job duties, defendants failed to pay him $0.075 as prescribed by the IRS mileage rate.

Further, none of defendants' arguments are persuasive here. The only cases cited by defendants in support of their argument are used to illustrate

the notion that some factual showing is required of plaintiff to succeed on this motion, and that plaintiff has failed to do so here. But plaintiff has done more than offer anecdotal hearsay—he has provided two sworn affidavits.

Simply put, Bryan's motion and supporting materials amount to much more than anecdotal hearsay. He submitted two affidavits setting forth how he and Mallory worked at the same store, performed the same duties, received the same compensation, and suffered the same pecuniary injury from an allegedly inadequate reimbursement policy. *See* Dkt. Nos. 36-3, 36-4. Both affidavits assert that defendants' policy applied to all of defendants' delivery drivers, and that they have personal knowledge of at least some other drivers were harmed by the policy. *Id.*

Upon review, Bryan satisfies the "low standard of proof" required to show that "there are other employees who are similarly situated with respect to their job requirements and […] their pay provisions" and who were inadequately compensated "pursuant to a common plan or scheme." *Myers*, 624 F.3d at 555. Accordingly, the Court will conditionally certify the FLSA collective of all delivery drivers currently or formerly employed by defendants as set forth below.

### B.   Notice, Equitable Tolling, and Opt-In Period

The next step is to review and approve the content and means of notice that will be provided to potential opt-in plaintiffs. "Determining what

constitutes sufficient notice to putative plaintiffs in a Section 216(b) collective action is a matter left to the discretion of the district courts." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d. 346, 356 (E.D.N.Y. 2008).

As a threshold matter however, defendants captioned the initial argument in their opposition to this motion as: "Plaintiff Has Not Demonstrated That Section 216(b) Notice Should Issue." Defs.' Mem. at 4. But curiously, each argument that follows instead focuses on why Bryan fails to demonstrate commonality or otherwise takes issue with the factual basis of plaintiff's arguments. *See* Dkt No. 38 at 4–9.

As discussed *supra*, arguments addressing the factual merits of plaintiff's motion are best reserved for a later date. *See Myers*, 624 F.3d at 655. For purposes of this motion, however, defendants have not provided the Court with any substantive arguments as to, *inter alia*, plaintiff's Proposed Notice or Consent Form, the merits of setting an opt-in period for prospective plaintiffs, or how the Proposed Notice and Consent Form would most appropriately be disseminated.

Bryan, for his part, makes several requests regarding these issues. *See generally* Pl's. Mem, Dkt. No. 36-1. These will be taken in turn.

**1. Proposed Notice and Consent Forms**

First off, Bryan requests that the Court issue the Proposed Notice and Consent Form that accompany his motion, Dkt. No. 36-2, to individuals

- 11 -

employed by defendants as delivery drivers between March 25, 2021 and "present." Dkt. No. 36-5 at 1; *see also* Dkt. No. 36-2 at 1.

"Under the FLSA, plaintiffs are generally afforded two years to file a claim from the time the cause of action accrued unless the cause of action is 'willful,' in which case plaintiffs are afforded three years." *Cheng Xia Wang v. Shun Lee Palace Rest., Inc.*, 2018 WL 3155835, at *5 (S.D.N.Y. June 28, 2018) (citing 29 U.S.C. § 255(a)). But where parties dispute the willfulness of the violations at issue, courts generally apply a three-year look-back period instead. *See, e.g., Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010).

Plaintiff argues the proposed notice provides accurate and timely notice of the collective action and prevents duplicative lawsuits and/or the need to set cutoff dates to expedite the disposition of this action. Pl's. Mem., Dkt. 36-1 at 12. Further, plaintiff describes defendants' failure to comply with FLSA's minimum wage requirements as "willful" on multiple occasions in the operative complaint. *See* Dkt. No. 24 ¶ 34, 49, 51.

Defendants deny or otherwise challenge the merits of plaintiff's cause of action. So "willfulness" is certainly in dispute. *See* Defs.' Mem., Dkt. No. 38. Thus, the three year-look back window properly applies. Because Bryan filed his original pleading on March 25, 2024, Dkt. No. 1, plaintiff's cause of action must have accrued on or after than March 25, 2021, no more than three years

prior. Indeed, that is precisely the date offered by plaintiff in his Proposed Notice. *See* Dkt. No. 36-2.

Upon review, the Court conditionally approves the putative FLSA collective as set forth below.

**2. Opt-in Period**

Plaintiff also requests a 90-day opt-in period to be measured from the date that notice is sent to all potential plaintiffs. Pl's. Mem., Dkt. No. 36-1 at 12. Plaintiff argues that such an opt-in period is generally granted by courts in this Circuit where it is either agreed upon by the parties or where special circumstances are shown. *Id*.

There is no evidence of agreement. Thus, plaintiff apparently opts for the special circumstances path, arguing that due to the elusive and transient nature of work as a delivery driver, it is not uncommon that multiple attempts would be required to locate and give notice to putative class members. *Id*. Defendant has not provided any arguments in opposition.

60-day opt-in periods are the standard for FLSA actions, though 90-day periods are common where a longer-than-usual opt-in period is necessary. *Fischer v. Gov't Emps. Ins. Co.*, 2025 WL 964152, at *14 (E.D.N.Y. Mar. 31, 2025) (citing *Park v. Hanpool, Inc.*, 2024 WL 4299749 at *6 (S.D.N.Y. Sept. 26, 2024). "While some courts have granted up to 90-day opt-in periods, they generally do so where the period is agreed upon between the parties or

special circumstances require an extended opt-in period." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011)); *see also Park*, 2024 WL 4299749, at \*6 (S.D.N.Y. Sept. 26, 2024) (denying plaintiff's request for a 90-day opt-in period where plaintiff's primary basis was more potential plaintiffs *could* be served) (emphasis added).

Plaintiff has provided a sufficient reason why, in this particular set of circumstances, an elongated opt-in period is warranted. Accordingly, plaintiff's request for a 90-day opt-in period will be granted.

### 3. Equitable Tolling

Bryan does not mention equitable tolling in his papers. Dkt. Nos. 36-1, 42. But typically, in FLSA collective actions, the statute of limitations for each plaintiff runs from when they file written consent with the Court electing to join the lawsuit, *not* when the named plaintiff files the complaint. *See, e.g.*, *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012); *see also* 29 U.S.C. § 256(b).

Nevertheless, "courts have discretion to equitably toll the limitations period […] to avoid inequitable circumstances." *McGlone*, 867 F. Supp. 2d at 445 (quoting *Yahraes v. Rest. Assocs. Events Corp.*, 2011 WL 844963, at \*1 (E.D.N.Y. Mar. 8, 2011)). Further, "[t]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance'

justifying application of the equitable tolling doctrine." *Yahraes*, 2011 WL 844963 at *2.

Bryan's motion for conditional certification has been pending since November 15, 2024. *See* Dkt. No. 36. "While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to […] understandable delays in rulings." *McGlone*, 867 F.Supp. 2d at 445. Therefore, the limitations period will be equitably tolled for the period this motion remained pending from November 15, 2024 until the date of this Decision & Order.[4]

**4. Dissemination of Proposed Notice and Consent Form**

Next, plaintiff asks the Court to permit the Proposed Notice and Consent Form be sent to the class by mail, e-mail, and text message. Pl's. Mem., Dkt. No. 36-1, at 12–13. Plaintiff has provided the Court with a single version of the Proposed Notice and Consent Form. Dkt. No. 36-2.

Upon review, it is unclear at this time how plaintiff's proposed Notice and/or Consent Form—which runs to multiple pages—could be sent to potential opt-in plaintiffs by way of text message. Therefore, the request to use text messaging will be denied without prejudice. However, if Bryan still

---

[4] In the event that additional grounds arise warranting further tolling for the potential opt-in plaintiffs, plaintiff may move for such relief at that time.

seeks to disseminate the Proposed Notice and/or Consent Form by text message, he may submit for the Court's review a proposed text message notice within 14 days of the entry of this Order.

However, plaintiff's request to disseminate the Proposed Notice and Consent Form by mail or e-mail will be granted, and plaintiff will be given leave to submit amended versions of each.

### 5. Disclosure of Opt-In Plaintiff Information

Bryan also asks the Court to order defendants to disclose to him, within 10 days of the entry of this Decision & Order: the names, last known physical addresses, e-mail addresses, and telephone numbers of all potential opt-in plaintiffs. Pl's. Mem., Dkt. No. 36-1 at 12. Defendants have not objected to this request, and it will be granted. Defendants will be given 14 days, however, to disclose this information.

### 6. Notice of Pendency and Consent Form

Finally, Bryan seeks an Order that the Proposed Notice and Consent Forms be prominently posted at defendants' stores in areas readily and routinely available for review by potential class members. Pl's. Mem., Dkt. No. 36-1 at 13. But defendants indicated in their opposition that they no longer own the Papa John's stores relevant to this action. *See, e.g.,* Dkt. No. 38 at 5.

Upon review, plaintiff's request must be denied without prejudice. It may well be that some source of law or authority—under the FLSA or perhaps some related body of law—authorizes the court to post a notice to workers in a facility maintained by a non-party to this labor action. But if that authority exists, plaintiff has not identified it in his moving papers.

Accordingly, plaintiff will be granted 14 days to brief the Court as to what legal basis, if any, exists to support granting an order that the notices be posted in the stores even if defendants sold them.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1. Bryan's Motion for FLSA Conditional Certification and Court Authorized Notice (Dkt. No. 36) is GRANTED in part and DENIED in part;

2. The Court conditionally approves the following putative FLSA collective:

> All delivery drivers currently or formerly employed by Patriot, LLC or MVC, LLC d/b/a "Papa John's" between March 25, 2021 and July 7, 2025;[5]

---

[5] For clarity, this date accounts for the additional fourteen days that plaintiff is being provided to submit an amended Proposed Notice and Consent Form to the Court.

3. Plaintiffs shall submit amended versions of the Proposed Notice and Consent Form for the Court's review **within 14 days** of the entry of this Order;[6]

4. Plaintiff's request for a 90-day opt-in period for any putative collective members to join this action is GRANTED;

5. This 90-day opt-in period shall commence upon the submission and approval of plaintiff's amended Proposed Notice and/or Consent Forms;

6. Plaintiff's request to both mail and e-mail the Proposed Notice and Consent Form to potential plaintiffs is GRANTED upon this Court's approval of amended versions of each;

7. Plaintiff's request to send text messages of the Proposed Notice and Consent Form to the potential plaintiffs is DENIED without prejudice;

8. Plaintiff may submit for the Court's review a proposed text message notice **within 14 days** of the entry of this Order;

9. Plaintiff's request for defendants to disclose the names, last known physical addresses, email addresses, and telephone numbers of all potential plaintiffs **within 14 days** of the entry of this Order is GRANTED;

---

[6] The attorney of record on the Proposed Notice has withdrawn from this matter.  *See* Dkt. Nos. 43–44; *see also* Dkt. No. 36-2.  Further, the putative class in the Proposed Notice does not align precisely with this Order.  These should be updated and submitted to the Court.

10. The statute of limitations in this matter shall be tolled for the entirety of the period that this motion remained pendent with the Court—November 15, 2024 until the entry of this Decision & Order;

11. Plaintiff's request that defendants post the Proposed Notice and Consent Form in their stores is DENIED without prejudice; and

12. Plaintiff may submit briefing to this Court **within 14 days** as to defendants posting the Proposed Notice and Consent Form in their stores.

The Clerk of the Court is directed to terminate the pending motion and set deadlines accordingly.

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated: June 23, 2025
   Utica, New York.